```
 1              UNITED STATES DISTRICT COURT      FILED
                EASTERN DISTRICT OF NEW YORK   IN CLERK'S OFFICE
 2                                             U.S. DISTRICT COURT E.D.N.Y.
      - - - - - - - - - - - - - X
 3                                              ★ FEB 2 2 2011 ★
      UNITED STATES OF AMERICA,   :
 4                                     11CR 05   BROOKLYN OFFICE
 5         -against-                   United States Courthouse
                                  :    Brooklyn, New York
 6    BARTOLOMEO VERNACE,
 7            Defendant.
                                  :    February 9, 2011
 8                                     2:30 o'clock p.m.
      - - - - - - - - - - - - - X
 9
              TRANSCRIPT OF DECISION ON BAIL APPEAL
10            BEFORE THE HONORABLE SANDRA L. TOWNES
                 UNITED STATES DISTRICT JUDGE
11
      APPEARANCES:
12
      For the Plaintiff:     LORETTA LYNCH
13                           United States Attorney
                             BY:  EVAN NORRIS and STEPHEN FRANK
14                           Assistant United States Attorneys
                             225 Cadman Plaza East
15                           Brooklyn, New York 11201
16    For the Defendant:     GERALD SHARGEL, ESQ.
17

18

19
      Court Reporter:        Henry R. Shapiro
20                           225 Cadman Plaza East
                             Brooklyn, New York
21                           718-613-2509
22
      Proceedings recorded by mechanical stenography, transcript
23    produced by CAT.
24

25
```

1    THE COURT:  The issue of whether to grant detention

2  or release is an issue to be decided de novo as a result of

3  the government's appeal of the decision of the

4  Magistrate-Judge.

5        Under the Bail Reform Act, 18 U.S.C. Section 3141,

6  pretrial detention is available only pursuant to 3142(e).  See

7  18 U.S.C. 3142(a)(4). United States versus Dilard 214 F3 88,

8  pages 90 and 91, Second Circuit 2000.

9        That subsection expressly authorizes the pretrial

10  detention of a defendant upon a finding that:

11        "No condition or combination of conditions will

12  reasonably assure the appearance of the person as required and

13  the safety of any other person and the community."

14        Under certain circumstances, as here, there is a

15  statutory rebuttable presumption that no condition or

16  combination of conditions will reasonably assure the

17  appearance of the defendant as required and the safety of any

18  other person and the community.  See 18 U.S.C. Section

19  3142(e).

20        The rebuttable presumption attaches if the judicial

21  officer finds that there is probable cause to believe that the

22  defendant committed an offense in violation of Section 18

23  U.S.C. Section 924(c).  Because the defendant has been

24  indicted for violating 18 U.S.C. Section 924(c), that

25  statutory presumption in favor of detention arises that:

1       "No condition or combination of conditions will

2 reasonably assure the appearance of the person as required and

3 the safety of any other person in the community." A

4 presumption both of flight and dangerousness arises because of

5 that crime charged. Whereas, here, a presumption of detention

6 is applicable, the defendant is required to introduce evidence

7 to rebut the presumption. See Marter, 782 F 2d, at page 1144.

8       But this does not cause the presumption to disappear,

9 rather it continues to be weighed with other factors effecting

10 the decision to release or detain the defendant.

11       See Rodriguez 9950, F 2d, at page 88.

12       However:  "The government retains the burden of

13 persuasion." See Rodriguez at page 88.

14       To determine whether the presumption of dangerousness

15 and flight are rebutted, the District Court considers, under

16 United States versus Mercedes, 254 F 3d 433 at page 436:

17       First, the nature and circumstances of the crimes

18 charged.

19       Second, the weight of the evidence against the

20 defendant.

21       Third, the history and characteristics of the

22 defendant, including family ties, employment, community ties,

23 past conduct.

24       Four, the nature and seriousness of the danger to the

25 community or an individual.

1    First, the nature and circumstances of the crimes

2 charged.  The defendant has been charged in Count One with a

3 racketeering conspiracy and with regard to Racketeering Acts

4 One and Two, if convicted the defendant, the maximum penalty

5 is custody for a period of life.

6    Racketeering Act one is conspiracy to murder and

7 murder as is Racketeering Act Two. Racketeering Act Three

8 illegal gambling. Racketeering Act Four, which is a crime of

9 violence, as well as One and Two, extortionate extention of

10 credit, conspiracy, with the maximum period of imprisonment

11 twenty years.

12    Racketeering Act Five, under Count One, illegal

13 gambling and Racketeering Act Seven, crimes of violence,

14 extortionate extension of credit and extortionate collection

15 of credit. That is Six and Seven,  both crimes of violence,

16 and Count Two charges the defendant with using carrying and

17 possessing a firearm, where if convicted, the sentence is not

18 less than ten years under the facts alleged in this

19 indictment.

20    As stated, if convicted, the defendant is confronted

21 with a potential sentence of life imprisonment.

22    The second consideration, weight of the evidence

23 against the defendant.  The government has proffered that

24 there will be testimony of seven cooperating witnesses, and

25 also law enforcement witnesses, and other eyewitnesses, who

1  are neither cooperating nor law enforcement, and documentary

2  evidence, including tape recorded conversations of members of

3  the crime family, surveillance photographs and video and other

4  evidence.  The evidence proffered by the government appears to

5  be strong at this time.

6       The third consideration, is the history and

7  characteristics of the defendant, including family ties,

8  employment, community ties and past conduct.  The defendant

9  has shown ties to family and community, and prior criminal

10  convictions are limited to gambling offenses.

11       According to the pretrial investigation report, the

12  defendant has ties to Italy, the defendant is unemployed, the

13  defendant has used a false name, and according to the

14  government the defendant continued to commit criminal conduct

15  while on bail from and during the period 1999 to 2002.

16  Further, the defendant does not own his residence and next,

17  the defendant appears to possess the financial ability to flee

18  as evidenced by the currency recovered from him at his social

19  club on January 17, 2011.

20       United States versus Mercedes, the citation, again,

21  254 F 3d, 437 and 38, Second Circuit, 2001.  In that case the

22  circuit held that factors favoring release such as citizenship

23  and strong ties to the community do not overcome a presumption

24  against pretrial release where the defendant is charged with a

25  violent crime and the evidence against him is strong as it

1  appears to be in this case, and

2         Fourth, the nature and seriousness of the dangers to

3  the community or an individual.

4         With regard to this, I did listen to Government

5  Exhibit A, a conversation between one of the defendant's

6  associates and what appears to be a cooperating witness in

7  1999.  During this conversation where the defendant's

8  associate was not aware that he was being taped, there was a

9  discussion of the defendant's arrest for the two homicides

10 involved here.  From that discussion I gleaned that the

11 defendant, in the opinion of his associate, is a real

12 gangster, not a want to be, is the real thing. He asked the

13 question:  "Do homicides and infliction of injury happen, does

14 it happen. Yeah, it happens every day.  Different

15 circumstances from, that of John Doe allow that to happen,"

16 and as quoted by the associate, "if they found you were

17 setting them up, more than likely, yeah."

18        Evidence of extortion and injury and homicide can

19 result under certain circumstances.

20        The defendant argues that there is no proof that he

21 is a present danger, however, the government has also

22 proffered evidence that the defendant is a high ranking member

23 of the Gambino organized crime family.  Pursuant to

24 information provided by one cooperating witness, he was a

25 captain in 2007, and in 2008 to 2009, another cooperating

witness informed, that the defendant along with Marino and
Gambino have been elevated to run the affairs of the family as
a three member panel, which according to that witness,
remained in effect at least until 2010.

The government has also produced evidence, that the
previous crime family administration members were arrested in
2008 and prosecuted and at that time there was a void in the
administration or leadership of the crime family when the
cooperating witness alleges that the defendant, along with
others, stepped into that position.

Second, surveillance has revealed the defendant in
the company of organized crime figures up to January of 2011.
The list of those present in the back room of the defendant's
social club on January 17th of this year is telling.  They
include Gambino crime family captains and soldiers, all
convicted felons, and it is the opinion of this Court that
alone shows the defendant's continued involvement in organized
crime, and the fact of the defendant's leadership position has
not been rebutted. As a leader, the defendant has at his beck
and call dangerous criminals to do his bidding.

Pretrial services is unable to monitor the defendant
sufficiently to assure that he cannot direct others to commit
acts of violence, even though he does not leave his home.
There is at least one other person who resides in that
residence who are not subject to home confinement

1  restriction.

2       A crime of violence is defined in the Bail Reform Act
3  as: "

4       A, an offense that has, as an element of the offense,
5  the use, attempted use or threatened use of physical force
6  against the person or property of another.

7       "B, any other offense that is a felony and by it's
8  nature involved a substantial risk that physical force against
9  the person or property of another may be used in the course of
10  committing the offense.". 18 U.S.C. 3156 subdivision (a)(4).
11  The Second Circuit has clearly held that:

12       "Leaders of criminal gangs who direct the commission
13  of violent crimes by others, can be detained prior to trial
14  under the circumstances prescribed by the act." United States
15  versus Colombo, 777 F 2d 96, at page 98.  That is a Second
16  Circuit 1985 case.

17       Moreover, the defendant need not be shown to have
18  personally engaged in acts of physical violence before being
19  found to be a danger to the community and also United States
20  versus Defede 7 F Supp at page 395, holding that:

21       "The threat inherent in defendant's continued
22  liberty need not stem directly from the threat of any violent
23  acts by him."

24       As the court in United States versus Belomo noted:
25  "The leader of a criminal enterprise with the ability to

1  order members of that enterprise to engage in criminal actions

2  may be an danger to the community despite the lack of evidence

3  that he directly participated in many, if any, of the charged

4  crimes. 944 F Supp 1160 at page 1166, and this is a Southern

5  District of New York case dated 1996. Citing United States

6  versus Orena 986 F 2d, 628 at page 632, Second Circuit, 1993.

7        The courts have also made it clear that: "The

8  dangerousness of the defendant is not determined solely by

9  looking at the acts charged in the indictment," although that

10  would be sufficient here.  There is no requirement of a nexus

11  between the charged conduct and the basis of the Court's

12  conclusion that a defendant is a serious danger to the

13  community.

14        This Court, therefore, may look beyond the charged

15  conduct to assess the degree of danger that the defendant

16  possesses, and I must tell you that the recording that I

17  listened to made it very clear that this crime family engages

18  in dangerous acts, including acts of homicide, and that this

19  defendant is a leader in this crime family.

20        Here the government has proffered evidence, which as

21  I stated before, has not been controverted, that the defendant

22  is a leader of the crime family, because of the authority

23  inherent in that position, the defendant possess a danger from

24  which there can be no combination of conditions sufficient to

25  prevent him from continuing in that role, even if placed under

1  house arrest. **See** United States **versus** Orena, 986, F 2d, at

2  pages 632 through 633:

3          "It's **well** established **that** a person who holds

4  defendant's **status** routinely **engage** in conduct that is a

5  menace to public safety," and that is corroborated by the

6  conversation on **the** audio tape **listened** to by this Court, even

7  though the def**endant** was not a **participant** to the

8  conversation.

9          "The **argument** thus is **based** not on the status, but

10  on the inference **a** person in defendant's position is quite

11  likely to engage **in** dangerous conduct, just as one reasonably

12  could infer that **one** holding the **position** of major league ball

13  pitcher is entirely likely to hurl **a** small white object in the

14  direction of home plate."

15          United States versus Fefede 7 F Supp section, at page

16  391, note four.

17          Since **there** does not appear to be a dispute that the

18  administration of an organized crime family has substantial

19  power and the **authority** to supervise the criminal activities

20  of the family, including acts of violence, the threat of the

21  defendant's continued liberty still his ability to continue to

22  direct, plan, order and supervise criminal activity even if he

23  himself may not **be** personally involved, and as indicated in

24  the audio tape **to** which this Court listened, the act of

25  homicide is something that can be **expected** by those who setup

1  or as I interpret it cooperate against the the defendant.

2        Accordingly, based on all of the evidence before this

3  Court and for the reasons set forth, in United States versus

4  Defede. 7 F Supp, 390; United States versus Belomo, 944 F

5  Supp, 1160; United States versus Colombo, 777 F 2d, 96, United

6  States versus Orena, 986 F 2d, 628, and on the record before

7  it, this Court orders that the defendant be detained pending

8  trial, based upon the Court's finding on clear and convincing

9  evidence that there are no conditions or combination of

10 conditions that will reasonably assure the safety of the

11 community, were he to be released on bail.

12        So bail is denied.

13        I will get a copy of my decision here, sign it and

14 get it to you. I know you want to appeal it, so I'll do that

15 as quickly as possible.

16                    Thank you.

17                    ******

18

19     SO ORDERED:  _____        2/16/11

20                      USDJ

21

22

23

24

25